John Turscak, #0-923103
North Carolina Dept. Of Corrections
Marion Correctional Institution
P.O. Box 2405
Marion, North Carolina 28752-2405

FILED
CLERK, U.S. DISTRICT COURT
JUL 31 2006
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. CV 05-2421-AHM |
| Plaintiff, | ) | CR 99-382-AHM |
| v. | ) | |
| JOHN TURSCAK, | ) | DEFENDANT'S RESPONSE TO GOVERNMENT'S OPPOSITION |
| Defendant. | ) | |

Defendant, John Turscak, hereby submits to this honorable Court the attached handwritten document described as: "Defendant's Response to Government's Opposition". Defendant also reasserts his position stated in his § 2255 filings, in that Defendant does not have access to a photo copy machine [and] for good cause shown request the Clerk of Court to please make (2) complete copies of these filings, and, send by Certifide Mail One Copy to Defendant and Plaintiff- Assistant United States Attorney Diana L. Pauli - in the above entitled action. Thank you. Executed on this 10th day of July 2006.

Respectfully Submitted,

John Turscak, Defendant



DOCKETED ON CM
AUG 10 2006
BY
17

# TABLE OF CONTENTS

PAGE

DEFENDANT'S RESPONSE

I. STATEMENT OF FACTS . . . . . . . . . . . 2

II. ARGUMENT . . . . . . . . . . . 3

    A. DEFENDANT DOES NOT HAVE PROCEDURALLY DEFAULTED CLAIMS FOR THE REASONS ARTICULATED BY THE AUSA . . . . . . . . . 3

    B. THE AUSA HAS MISINTERPRETED DEFENDANT'S DOUBLE JEOPARDY CLAIM . . . 4

    C. THE AUSA'S ARGUMENT THAT DEFENDANT'S FIVE SEPERATE CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ARE WITHOUT MERIT, IS NOT PERSUASIVE . . . . . . . . . . . 6

III. CONCLUSION . . . . . . . . . . . 14

SECOND NOTICE RE: COURT ORDER DATED MARCH 15, 2006; EXHIBIT . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . 19

# TABLE OF AUTHORITIES

PAGE(S)

CASES:

Brady v. Maryland,
   373 U.S. (1963) . . . . . . . . . . . . 4

Hendricks v. Vasquez,
   974 F.2d 1099, 1109 (9th Cir. 1992) . . . . . . . . . . 4

Strickland v. Washington,
   466 U.S. 688 (1984) . . . . . . . . . 4, 15, 12

Murray v. Carrier,
   477 U.S. 478, 492 (1986) . . . . . . . . . . . 4

Castro v. United States,
   U.S. 124 S.Ct. 786, 792 (2003) . . . . . . . . . . 4

Dep't of Revenue v. Kurth Ranch,
   511 U.S. 767, 769 (1994) . . . . . . . . . . . 5

Morrison v. Estelle,
   981 F.2d 425 (9th Cir. 1992) . . . . . . . . . . 5, 12

Miller v. Keeney,
   882 F.2d 1428 (9th Cir. 1989) . . . . . . . . . . 5, 12

United States v. Delafuenta,
   8 F.3d 1337-38 (9th Cir. 1993) . . . . . . . . . . 9

United States v. Benboe,
   157 F.3d 1181 (9th Cir. 1998) . . . . . . . . . . 14

Schlup v. Delo,
   513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) . . . . . . . 14

SCANNED

TABLE OF AUTHORITIES (CONTINUED)

PAGE(S)

STATUTES:

28 U.S.C. § 2255 . . . . . . . . . . . . Passim

RULES:

Fed. R. Crim. P. 35 . . . . . . . . . . . . 13

UNITED STATES SENTENCING GUIDELINES:

U.S.S.G. § 5K1.1 . . . . . . . . . . . . Passim

U.S.S.G. § 2A1.1 . . . . . . . . . . . . 5

U.S.S.G. § 5K2.0 . . . . . . . . . . . . 11

## RESPONSE

In attempting to respond to the government's opposition to Defendant's § 2255 motion that has been filed outside the time limit specified by the Court in it's March 15, 2006 "ORDER". Defendant is simply going to go down the line and try his best to show this honorable Court in summary how the AUSA's arguments described in parts A-C are in fact completely without merit, and, are not rationally related to any legitimate government purpose.

### I.
### STATEMENT OF FACTS

On January 18, 2006 the AUSA filed an ex parte application for an Order granting additional time within which to respond to Defendant's § 2255 motion. That same day the AUSA filed an Amended ex parte application for a Court Order declaring partial waiver of attorney-client priviledge and compelling disclosure of certain "Communications". In this application, the AUSA states its reasons for requesting this additional time, in pertinant part stating as follows: The AUSA hereby files this ex parte application for a Court Order: Compelling attorney Steven Cron to disclose to the government and the Court [all] "Communications" with Defendant concerning which relate to the issues presented in Defendant's § 2255 motion; In his motion, Defendant argues that his Counsel, Steven Cron, provided ineffective assistance of Counsel by failure to make certain arguments at sentencing. Defendant has waived the attorney-client priviledge with respect to the issues raised in his § 2255 motion because he relies on "Communications" between himself and his attorney, as well as an examination of his attorney's efforts in support of his ineffective assistance of Counsel. Consequently, the government request the Court to declare that such a waiver has occurred and Order his attorney Steven Cron, to disclose to the government "Communications" with Defendant concerning the "events and facts" involved in Defendant's guilty plea and sentencing. On January 19, 2006 this Court "GRANTED" the AUSA's ex parte application(s) Ordering attorney Steven Cron to disclose to the government and to the Court [all] "Communications" between himself and Defendant concerning the "events and facts" related to Defendant's claims of ineffective assistance of Counsel in United States v. John Turscak, No. CV 05-2421-AHM. On March 13, 2006 the AUSA filed yet another ex parte application for an Order granting additional time within which to respond to Defendant's § 2255 motion. This was the government's "second request for an extention of time, and the AUSA stated its reasons

-2-

for requesting this additional time, stating in pertinent part as follows: Attorney Cron has not had an opportunity to fully examine Defendant Turscak's § 2255 motion and still must obtain his records relating to the representation of Defendant Turscak from his storage location; The government is "still reviewing" the underlying case an materials and "FBI-reports" referred to in the § 2255 motion." It must be noted that Defendant Turscak refers to a "Supplemental brief" and "exhibits" that are not in the Court file nor served on the government. This appears to be a reference to a memorandum separate from his request to file the motion outside the statute of limitations. See § 2255 motion Ground 2, p.5 (reference to the sentencing transcript attached as "Exhibit C") and § 2255 motion Ground 1, p.5 (reverse side) (reference to "Defendant's Memorandum"). On March 15, 2006 this honorable Court "Granted" the AUSA's ex parte application Ordering that the government shall obtain the materials referred to at p.2: 14-23, in reference to Defendant's "Supplemental Memorandum". On March 20, 2006 the AUSA wrote to Defendant in order to, inter alia, inform Defendant that the supplemental brief is not in the Court file and requested the pleading be filed an served on the government. On April 26, 2006 Defendant responded to the AUSA's request notifying the government and the Court via this pleading as to the reasons why Defendant had been unable to file his "Supplemental Memorandum", and needed additional time to do so (See Defendant's pleading at p.5 with attached letter from attorney Steven Cron). On June 2, 2006 the AUSA sent Defendant a pleading entitled; "Notice Re: Court Order Dated March 15, 2005", Exhibit "(Attached Hereto). Defendant does not know if the AUSA filed this pleading with the Court or if the Court issued a ruling, as the government's opposition papers mentions nothing about the outcome of this June 2, 2006 "Notice". On June 19, 2006 the AUSA filed the government's opposition to Defendant's § 2255 motion.

II.

ARGUMENT

A. DEFENDANT DOES NOT HAVE PROCEDURALLY DEFAULTED CLAIMS FOR THE REASONS ARTICULATED BY THE AUSA

The AUSA's core argument described in part A. of the government's opposition is that Defendant has procedurally defaulted claims. In part A, the AUSA does not deny the fact that Defendant's claims One and Two are clearly unconstitutional violations, and, even goes so far as to admit that the government's withholding of its discovery

-3-

log from Defendant in early 2001 was infact a "Brady Violation". Brady v. Maryland, 373 U.S. (1963). However, due to Defendant's failure to raise these two grounds with this Court or the United States Court of Appeals for the 9th Cir. and because they were not "unknown" to the Defendant, they should be procedurally defaulted and denied on that ground. Here the AUSA is mistaken. On the contrary, these two claims were not "unknown" to Defendant's attorney Steven Cron, and therefore it was Counsel's responsibility to raise these two claims before this Court and the United States Court of Appeals, not Defendants. Hadn't it been for Counsel's Constitutionally deficient proformance in his failure to present the existing evidence mentioned in Defendant's § 2255 motion necessary to prove these two unconstitutional claims, then the result of Sentencing would have been different. For such incompetence and dificient proformance are far enough outside the range of professionally competent assistance that had "without a doubt" resulted in subsequent prejudice to Defendant, meeting the requierments set forth in Hendricks v. Vasquez, 974 F.2d 1099, 1109 (9th Cir. 1992). Furthermore, as defined in Strickland v. Washington, 466 U.S. 668 (1984), and, Murray v. Carrier, 477 U.S. 478, 492 (1986) "Attorney error short of ineffective assistance of Counsel does not Constitute Cause for a procedural default". Therefore, this honorable Court can not find Defendant's claims to be procedurally defaulted in light of Counsel's clear errors. Addicnally, Defendant did not become aware of these two unconstitutional violations until I started doing research on my own in reference to my § 2255 Motion to "now know" that I do have solid factual grounds to raise. Meeting the criteria established in the Local Rules as "newly discovered evidence", that Counsel failed to present before this Court and the United States Court of Appeals. Castro v. United States, U.S. 124 S. Ct. 786, 792 (2003).

Because Defendant has established "Cause and prejudice" for these two claims, and, being that the AUSA has not given any opposition that an evidentiary hearing should not be held on these two claims; grounds one and two of the instant § 2255 motion should be properly "GRANTED". As there is need in the interest of Justice to hold an evidentiary hearing on these two grounds.

B.  THE AUSA HAS MISINTERPRETED DEFENDANT'S DOUBLE JEOPARDY CLAIM

In part B. of the government's opposition, the AUSA has completely missed the mark in respect to Defendant's Double Jeopardy Claim. The AUSA has confused the issues, so much that it is quite obvious that the AUSA did not

-4-

even bother to carefully read into Defendant's supporting facts on this ground. Therefore, to set the record straight, it should be noted that nowhere in my § 2255 motion does it state the claim that I was convicted of murder by California authorities as the AUSA has mistakenly argued. The claim clearly states that in reference to the Folsom Prison murder I was found guilty by the state of California "prison officials". Does not state I was found guilty by a jury trial or that I was convicted of that murder by California authorities. Defendant's supporting facts on this ground says no such thing. The Double Jeopardy ground Defendant has raised pertains to "multiple punishments" for the "same offense". Dept of Revenue v. Kurth Ranch, 511 U.S. 767, 769 (1994). Therefore, instead of the AUSA obtaining my "rap sheet" she should have obtained my California Department of Corrections (CDC) "prison records" and a copy of the "agreement" I entered into with the government (prior to signing the plea agreement) verifying that I had been punished by prison officials for this murder, and that my admissions to this murder could not be used against me. The reason(s) why Defendant did not contest the Base Offense Level prior to signing the plea agreement, was due to the fact that Counsel had explained to me that the Base Offense Level was "meaningless", being that the actual charges I had agreed to plead guilty to carried no mandatory minimum sentence, and, in fact specifically allows for imprisonment or fine. (See: Defendant's Sentencing Memorandum - at page 29: 25-28). Counsel also pointed out to me in the plea agreement that the government agreed to dismiss my charges at sentencing. (See: Plea Agreement at page 5: paragraph 13), and, therefore I was in a "win-win" position to be in by entering into the plea agreement and not challenging the government (i.e.) wait till the Grand Jury indicts me and see exactly what kind of evidence the government had against me. However, after having learned that the government was reneging on these terms of the plea agreement, I did some researching on my own and found the Base Offense Level is infact in clear error. As I do not have a prior conviction of murder, and the plea agreement specifically states that I have a right to present these facts and relevant information at sentencing, which Counsel failed to do, falling way below an objective standard of reasonableness, and, as a result of Counsel's Constitutionally deficient proformance Defendant was infact sentenced to a "mandatory minimum" sentence of 30 years. Had Counsel raised these arguements before the Court and the United States Court of Appeals as I had requested of him to do, then the result of sentencing would have been different. Strickland, 466 U.S. 688, 694 (1984); Morrison, 931 F.2d at 427; Keeney, 882 F.2d at 1433-34.

-5-

Because the AUSA has filed a faulty argument by confusing Defendant's Double Jeopardy Claim an evidentiary hearing should be "GRANTED" on this ground.

C. THE AUSA'S ARGUMENT THAT DEFENDANT'S FIVE SEPERATE CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ARE WITHOUT MERIT, IS NOT PERSUASIVE

The AUSA argues in part C. that Defendant's five seperate claims of ineffective assistance of Counsel are without merit. The AUSA's core reasoning is as follows: "Three of these four claims are simply conclusory, the claims do not state what "evidence" appointed Counsel failed to present or what "objective responses" were omitted and could have been argued to this Court. It leaves both the government and the Court to guess at Defendants meaning." In response to this meritless argument, in a disingenuous attempt to have Defendant's claims dismissed, the AUSA would have this honorable Court believe that the government actually has absolutely no idea what "evidence" Defendant is referring to in support of these grounds. When the truth of the matter is, the AUSA knows exactly what "evidence" Defendant is relying on in reference to my § 2255 motion, and, infact raised this same "evidence" and "facts" as a basis to have the Court grant an Order allowing the government additional time which to respond to Defendant's § 2255 motion, not once, but "twice" and there's no guessing about it. (See: "Statement of Facts" at pages 2-3). Now, all of a sudden there is no "evidence", there is no facts or events that the AUSA points to in the governments opposition. She is absolutely "clueless" and as a result would like this honorable Court to entertain such desperate hypocrisy to have my § 2255 dismissed, when this argument is simply not credible. Here's why, On January 18, 2006 the AUSA filed an Amended ex parte application for a Court Order declaring partial waiver of attorney-client priviledge and compelling disclosure of certain "Communications" that Defendant "relies on" as "evidence" and "facts" in support of my 2255 motion. The AUSA requested such an Order compelling attorney Steven Cron to disclose to the government and the Court [all] "Communications" with Defendant concerning which relate to the issues presented in Defendant's § 2255 motion. So, the "big question" here, your Honor, is where is all the "evidence" within these "Communications" that attorney Steven Cron was "ORDERED" to disclose to the government and the Court necessary to prove my § 2255 claims, that the AUSA now has stated she has absolutely no idea what "evidence" appointed Counsel failed to present or what "objective responses" were omitted and could

-6-

have been argued to this Court. When "everything" exist within these "Communications" that the AUSA was allowed "six months" to examine, in order to see whether or not this "evidence" has any merit to support Defendant's § 2255 claims. This is a clear abuse of the government's ex parte application(s) that were used solely as a stall tactic to buy additional time for the government to present its opposition. As the AUSA clearly did not follow through with what she had stated within these applications. To further prove my point, in the second ex parte application dated March 13, 2006 the AUSA stated that, the government is "still reviewing the underlying case, an materials and "FBI reports" referred to in the § 2255 motion. (see Gov. App at p. 2:14-15). Clearly your Honor, the AUSA certainly knew just exactly what "evidence" Defendant was relying on upon the filing of these ex parte applications, and, she had "six months" to give you her findings of this this "evidence" which she has failed to do. The AUSA has been totally evasive to give any type of a response concerning this very "evidence" that exist within the "Communications" and "FBI 302 reports" I rely on in support of my § 2255 motion. It clearly appears that upon the AUSA's examination into this "evidence and facts", the AUSA found solid proof showing that all of Defendant's claims do in fact have merit. However, in a very disingenuous attempt to have my claims dismissed, she now claims she has no idea what "evidence" Defendant is referring to, and, even went so far as to have attorney Steven Cron join her in this devious scheme against me. Like if they have joined forces together on a "buddy-buddy" team effort to have my 2255 dismissed. In essence telling attorney Cron to go right ahead disregard the Court's "ORDER", that he doesn't have to disclose to the Court and the government all "Communications" with Defendant, and instead simply sign the Declaration stating that " You have absolutely no idea what Defendant is talking about, so that we could rid of Turscak once and for all". This honorable Court must not allow the AUSA or attorney Cron to get away with these deceitful acts of trickery to win this case against me. For such disingenuous behavior should not be tolerated period. The government's violations are clear, the AUSA has abused and manipulated this Court's authority in obtaining not one, but "two" extentions of time which to respond to Defendant's § 2255 motion. The AUSA has violated two Court Orders, (1) by not obtaining all "Communications" with attorney Cron and Defendant concerning which relate to the issues presented in Defendant's § 2255 as the government had requested, (2) failed to present its findings in examining the "FBI 302 reports" referrenced in Defendant's § 2255 proving that the government had information all along that Defendant had infact been committing crimes in which they tactically condoned, and were.

-7-

aware of prior to the plea agreement. Actually, the government doesn't even dispute this claim, and, infact states it was still reviewing this "evidence" according to the government's ex parte application, that, now "all of a sudden" the AUSA disingenuously argues that she has no clue as to what "evidence" I'm referring to, and, (3) the AUSA did not obtain any of the "materials" referred to in the Court's March 15, 2006 "ORDER", even after I had informed her in my April 26, 2006 pleading that all of these "materials" are in attorney Cron's possession, which has clearly prejudiced me from being allowed a fair chance to re submit my "Supplemental Memorandum" as so "ORDERED" by this honorable Court.

Because the AUSA has committed all of these clear errors in deliberate violation of the Court's "ORDERS", and, due to the AUSA resorting to all sorts of disingenuous tactics to cover up the government's impermissible motives to suppress the "evidence" and "facts" that Defendant relies on to prove the grounds raised in the instant §2255 motion do infact have merit, Defendant has enough confidence and faith within this honorable Court for your Honor to see right through the sheer desperation and trickery in the government's entire opposition, to now "ORDER" an evidentiary hearing as so is required in the interest of truth and Justice.

When "GRANTED" an evidentiary hearing, Defendant will be able to prove "among other things".
(1)  Government's refusal to move for a 5K1.1 downward departure was (a) based upon "impermissible motives" (b) Constituted a "breach of the plea agreement" (c) was not rationally related to any "legitimate government purpose".
(2)  Defendant did not commit additional crimes after the plea agreement was Consummated, nor did Defendant fail to disclose the offenses alleged by the government in its November 13, 2000 Memorandum.
(3)  All of the crimes described in Defendant's 27 page letter obtained from the March 2000 interview were infact disclosed crimes prior to the plea agreement being Consummated. (* It should be noted, this is a document that I prepared with supporting "FBI 302 Reports" that Counsel failed to present at Sentencing. Attorney Cron is in possession of this document that can be located within the "evidence" that I rely on in our "Communications").
(4)  The government's refusal to file a 5K1.1 motion to reduce Defendant's sentence for the substantial assistance I provided was infact based upon impermissible and unconstitutional motives, was outside the terms of the plea agreement, and, was without a doubt an arbitrary decision on the part of the government.

-8-

(5) The government breached the plea agreement by using the FBI Personal Services Contract breach as a basis to withhold moving for a downward departure pursuant to U.S.S.G. § 5K1.1. When the "plea agreement" specifically states its breaches pertaining only to "this agreement", it does not state breaches pertaining to the Personal Services Contract/agreement that I had entered into with the FBI on February 27, 1997, nor does it contain any other type of agreement for that matter. "This agreement" only pertains to the "plea agreement" I signed with the government on April 21, 1999 (See: Plea Agreement-"No Additional Agreements"- page 8 at 19-20)." Nor may any "additional agreement", understanding or condition be entered into unless in writing and signed by "all parties". The Personal Services Contract/agreement that I entered into with the FBI was not a party to "this agreement" and therefore could not be used against me as a breach of the "plea agreement". Furthermore, any crime that the government alleged I committed prior to February 27, 1997 during my cooperation with the FBI cannot be used against me as a breach, when the fact clearly is there was no "written agreement" between me and the FBI prior to February 27, 1997.

(6) There is evidence of documented FBI 302 Reports (dozens more than what I refer to in my § 2255) to further prove the government had information all along that Defendant had infact been committing crimes in which they tactically condoned and knew prior to the "plea agreement", including the incident the government continues to refer to that I had admitted to purposefully committing a criminal act after I was told not to by my FBI handler Special Agent Eddie Lee (See: Gov's Opp at P.6: 2-4). Matter of fact, after having reported this incident to (SA) Eddie Lee I was not kicked off the FBI's team for admitting my involvement in this "unauthorized" criminal act, and, this incident occurred prior to February 27, 1997. Nevertheless, it was still a disclosed crime that is documented in a 302 Report prior to the "plea agreement".

(7) There does not exist any evidence to prove my involvement in the authorization of and resulting murder of Paul Perez as alleged by the government. Nor did I ever admit that after I pled guilty my wife had improperly held on to tape recordings that I had made about my involvement in this murder, and, at the end of my 27 page letter from the March 2000 meeting says no such thing. Hence, there is infact ambiguity to construe on the part of the government, and, "where there is any ambiguity as to the parties' obligations under the plea/cooperation agreement, they must be construed in favor of the Defendant". United States V. Delafuenta, 8 F. 3d 1337-38 (9th Cir. 1993). Here, there infact

-9-

is evidence to render, documented in an "FBI 302 Report" the year prior to entering into the "plea agreement" where my wife had informed agent Franklin Davis of these same very recordings that she had discovered in the glove compartment of our vehicle at the time I was serving my state parole violation, which had been accidently left behind by my FBI handler (SA) Eddie Lee during one of our meetings, and, it was Franklin Davis who was negligent in the handling of these tapes, he never made arrangements with my wife to pick them up as he said he would. "Two years later" Franklin Davis "all of a sudden" remembers and inquires the where abouts of these tapes, threatens my wife that if she didn't come up with them then I would be a very old man by the time I come home. Once Franklin Davis retrieved these tapes, took them into his possession, he then turned around very sneaky like and used them against me, alleging that I improperly withheld them from the government and that they "somehow" prove that I authorized Paul Perez to be murdered. When the truth of the matter is, nothing within those tape recordings mentions Paul Perez or me wanting him to be murdered. I have no idea who this individual was, I never had any dealings with him in my life and there is absolutely no evidence to prove that I had anything to do with this murder period. Nor did any of the government's in-court cooperators ever implicate my involvement in this murder. The evidence clearly shows that Mariano Martinez had given the orders through one of his soldiers for Paul Perez to be murdered and Charles Woody was the one who carried out this killing. This information was provided by the government's "star witness" Max Tordisco and he did not implicate me in any way as to having any involvement in this murder. There are several FBI 302 Reports and court testimony that can very easily prove everything I am saying is the truth. Therefore, I don't know where the AUSA Dan Levin came up with such false accusations to unjustly use against me as a basis to deny me the 5K1.1 motion that I rightfully deserve, but I did not have anything to do with Paul Perez being murdered, an I certainly did not admit to authorizing it for that matter, and, my 29 page letter says no such thing! As like <u>all</u> of the alleged criminal conduct that the government used as a basis to disguise their unconstitutional motives to unjustly withhold moving for a downward departure pursuant to 5K1.1. described in its November 13, 2000 Memorandum, the government got away with making all these sorts of outrageous alligations with no kind of factual support whatsoever!

(8)   Defendant will show how Tordisco, Detevis, and several other in-court cooperators failed to honor their commitments under their respective "plea agreements" in a degree that superceeded Defendant's alleged violations of

his "plea agreement" that has yet to be proven, and even the Court stated that I did not violate my plea agreement" (see: Gov.'s Opp. at p.11:6-7)

(9) Defendant will further prove that I never grudgingly and occasionally sporadically disclosed crimes during the period after April of 1997 when I began working as a confidential informant for the FBI. There does not exist a single FBI 302 Report to verify that I was ever caught lying about any of the crimes that I had to commit in order to accomplish the government's mission. Infact, throughout the entire time I had been working in an undercover capacity infiltrating the Enue Criminal Organization for the FBI, all of the crimes I had been participating in and reporting to my FBI handlers Special Agents' Eddie Lee and Dan Hoffer, not once were any of my statements that they both documented in FBI 302 Reports were ever proven to be false or misleading or that they felt I had been conning them in any way. Hypothetically speaking, "if" I had been doing anything even close to what the Court had mistakenly concluded, then there would exist "dozens" of FBI 302 Reports showing how I had grudgingly and occasionally sporadically disclosed crimes during the period after April of 1997. But the truth is, there's not, and the government mislead this honorable Court into believing these outrageous alligations that have not, and, can not be proven period.

(10) Defendant will also prove that the Court did not rule on all of the downward departure grounds set forth at pages 40-41 of Defendant's Sentencing Memorandum, and, that the Court's rejection of Defendant's claim of Differential Treatment was deemed to be in "clear error". For example, in this matter the Court noted the following: "I think the longest sentence I imposed, which was on Woody was 23 years, I think the record should reflect that no one admitted and Woody never admitted to those other murders, there's been no basis for a finding on my part that he committed those murders. Just the opposite is true with respect to Mr. Turscak", (see: Sentencing Transcripts at p.35) The Court was mistaken and in clear error when it made these findings. When infact Woody did plead guilty to murder and conspiring to engage in racketeering activity, did not cooperate with law enforcement or help the government in any way, yet he received a lesser sentence. This is very disperate, and, just the opposite is "not true" with respect to Defendant when I was never charged with actual murder unlike the many similarly situated co/defendants' who were charged and pled guilty to a murder charge, offered no cooperation to the government and still received sentences half that of what I was unjustly

-11-

sentenced to Serve. In fact, if Defendant was permitted to obtain a list of every single sentence that was handed out in the whole Fme indictments by both honorable Judges Matz and Carter, this list would clearly show many other co/defendants' not mentioned in Defendant's Sentencing Memorandum, who did not cooperate - did not help the government in any way - plead guilty to the same nature of offenses as Defendant, and, received very liniant sentences in the 10-14 year range. This list would further prove that the Court's rejection of Defendant's claim of Differential treatment was infact impermissible Sentencing disparity made in clear error and a failure to provide Equal Protection under the Fourteenth Amendment. Clearly proving prejudice, had it not been for Counsel's unprofessional errors in his failure to present these grounds to the United States Court of Appeals as I had instructed him to do, the result of my appeal would have been different. Strickland, 466 U.S. 688, 694 (1984); Morrison, 981 F.2d at 427; Keeney, 882 F.2d at 1433-34.

  In sum, Defendant has infact carried his burden proving that attorney Cron's failure to present the specified "evidence" and "objective response" were <u>both</u> below an objective standard of reasonableness and that the outcome of the sentencing would have been different. The AUSA argues that Defendant does not and <u>can not</u> make such a "showing", when "<u>I clearly have</u>". And in an act of sheer desperation to suppress the "evidence and facts" that Defendant relies on in order to prove my § 2255 motion grounds, the AUSA's best argument is that I have procedural Defaulted claims (when <u>I do not</u>), and that my claims are without merit (when they <u>undoubtably do</u>). As for what Counsel declares in his Declaration, no where does attorney Cron provide "sound, strategic reasons" why he did not pursue these issues on appeal or before this Court as I had advised him to do. Nor has he supported anything he has declared with Defendant's "Communications" as he was "ORDERED" to do. So the AUSA is mistaken. Attorney Cron simply states that he does not know what I'm talking about in reference to any "evidence" or objective findings, that he has "no recollection" of me asking him to present any "evidence" which he did not do. (a simple review of my "Communications" to counsel will prove Cron is not being truthful), and, he did not believe the Courts denial of Defendant's other downward departure request would be appropriate issues to raise on appeal. What does Counsel mean he didn't believe these would be appropriate issues to raise on appeal, when that was the only other opportunity available to present these issues, as according to attorney Cron, he did not see any other realistic avenues to pursue in order to have my sentence reduced or overturned. I mean, if these infact were appropriate issues to raise before the District Court, then the only logical

-12-

reasoning to conclude, is that they are surely appropriate issues to raise on appeal. "Especially" in light of the Newly Discovered Evidence that I had asked Counsel to present. Hence, attorney Cron's refusal to present these issues before the United States Court of Appeals clearly prejudiced Defendant, and Counsel provides no "Sound, Strategic reasons" for his failure to do what I instructed him to do. Nor has he provided any of the "Communications" Showing that I was in exceptance of his unprofessional believes not to raise these issues on appeal. When the facts clearly are, attorney Cron incompetently chose not to present these issues, and, he failed to keep me reasonably informed as to exactly what he was in the process of presenting to the Appeallant Court. It was not until my appeal had already been denied when Counsel finally decided to inform me. (A simple review of Counsel's "Communications" to Defendant will prove that I am not lying about these issues). Furthermore, for Counsel to declare that the reason why he did not file a Fed.R.Crim.P.35 on my behalf was because he did not learn of any new facts that would have made such a request worthwhile or appropriate, attorney Cron is not being truthful. Counsel has stated correctly that he was there at the March 2000 meeting, where the government claimed that it had information leading them to believe that I had been involved in an attempted murder for hire plot with Charles Woody on Cindy's husband. Counsel knew that I had offered to assist the government in obtaining a taped confession of Cindy proving that her and Woody had taken this crime to another level then what I was lead to believe at the time I had informed the government prior to entering into the "plea agreement". Although federal agents had agreed that this was a good idea and would get back to me, they never did. And instead this crime was later used against me as a basis to unjustly deny me the 5K1.1 downward departure motion. This tape confession not only would have cleared me of these alligations/the information federal agents had said they had, but it also would have netted the government the convictions of Cindy, Woody and the Shooters involved in this crime had the government agreed to use my cooperation. Which I'll never know because attorney Cron never presented these new facts in the form of a Rule 35. Being that the government knew that I was the only witness who could solve this crime for them, "indeed" it would have been very worthwhile and more than appropriate for Counsel to have presented these new facts to the government in the form of a Fed.R.Crim.P.35 as I had instructed of him to do. However, like all of Defendant's claims, attorney Cron simply chose not to follow up on this issue as I had requested of him to do. and, as a result of Counsel's unprofessional conduct that lead him to forget these important new facts,

-13-

I was prejudiced from having a chance at being able to have my sentence reduced, and, above all else, from being able to solve this crime for the government.

Because Defendant has in fact "carried the day" in this scenario, all I'm asking Your Honor is to be allowed a fair chance to make a colorable showing of actual, factual innocence, as defined in United States v. Benboe, 157 F.3d 1181, 1183 (9th Cir. 1998) and Schlup v. Delo, 513 U.S. 298, 327-28 (1995), to prove with actual evidence that exist in the governments discovery and within the "Communications" referred to in the government's Amended ex parte application, showing that I am not guilty of any of the things that the government unjustly used against me to deny me the 5K1.1 downward departure motion that I rightfully deserve [and] I don't need to be appointed counsel for post conviction assistance to prove these claims either.

### III
### CONCLUSION

Based on the foregoing facts, having good cause shown, and, in the interest of justice, this honorable Court is urged to "GRANT" an evidentiary hearing on all of Defendant's claims set forth in his § 2255 motion [and] for such other "ORDERS" as the Court deems just and proper in the pursuit of truth and justice. Defendant also reiterates his position as set forth in his pleadings filed May 19, 2006. Thank You.

I, Defendant, John Turscak, declare under penalty of perjury that the foregoing is true and correct. Executed on this 10th day of July 2006.

Respectfully Submitted,

*John Turscak*

John Turscak, Defendant.

## CERTIFICATE OF SERVICE

This is to Certify that I have this day Served the foregoing "Defendant's Response to Government's Opposition" upon the United States District Court for the Central District of California, by causing a true hand written original thereof to be deposited in the United States Mail via North Carolina D.O.C. prison officials, postage attached and addressed to the Court as follows:

>  Attn: The Honorable A. Howard Matz - U.S. District Judge
>  U.S. Courthouse, 312 N. Spring Street,
>  Los Angeles, California 90012

Copy of this document to be provided by the Clerk to Assitant United States Attorney Diana L. Pauli addressed as follows:

>  Attn: AUSA Diana L. Pauli
>  1400 United States Courthouse
>  312 North Spring Street
>  Los Angeles, California 90012

This 10th day of July 2006.

*John Turscak*
John Turscak, Defendant